Present: Koontz, Kinser, Lemons, and Mims, JJ., and Russell and Lacy, S.JJ.

JEANNE VUICH

v.  Record No. 092249　　　　　　　OPINION BY SENIOR JUSTICE
　　　　　　　　　　　　　　　　　　　ELIZABETH B. LACY
GREAT EASTERN RESORT　　　　　　　JANUARY 13, 2011
CORPORATION, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

In this interlocutory appeal filed pursuant to Code
§ 8.01-670.1, the sole issue before us is whether the trial
court correctly held that a snow tubing ride offered to the
public was not an amusement device subject to regulation under
the Virginia Amusement Device Regulations ("VADR"), 13 VAC
§ 5-31-10, et seq.

FACTS AND PROCEEDINGS

The facts relevant to this appeal are not in dispute.
Great Eastern Resort Management, Inc. owns and operates a snow
tubing park on a mountainside in the Massanutten Resort.  The
snow tubing park, called the Peaked Mountain Express, is a
steeply inclined slope, contoured, graded and groomed to
create an undulating slope with chute-like lanes to guide the
riders' descent down the slope.  The slope is covered by
natural snow or man-made snow shot from snow cannons located
on the slope and served by underground water lines.  The
riders stand on a conveyor belt, which takes them to the top

of the slope.  The riders then descend the slope on specialized inflated rubber donut-style tubes provided by the ride attendants.  The riders do not control their path while descending the slope but are guided by the chute-like lanes. Rubber mats are placed in the chute-like lanes in a run-out area to slow and stop the riders at the bottom of the slope. A blue wall made of stadium padding is located at the end of the run.  In 2005, the slope elevation of the snow tubing park was reconstructed and the park expanded by adding approximately five chute-like lanes.

On January 27, 2006, Jeanne Vuich went to the snow tubing park and rode down the slope on a tube.  Vuich's tube slid onto the run-out area at the end of the chute-like lane but the tube did not stop and she hit the blue wall located at the end of the run-out area, sustaining serious spinal injuries. Vuich filed a complaint against Great Eastern Resort Management, Inc., Great Eastern Resort Corporation, and The Resorts Companies, Inc. (collectively "Great Eastern"), seeking compensatory and punitive damages.

Vuich asserted that her injuries resulted from negligent design and operation of the snow tubing ride.  Vuich, in a motion to increase her ad damnum, further asserted that the snow tubing ride was subject to the provisions of the VADR

2

relating to gravity rides.[1]  Vuich alleged that her injuries resulted from Great Eastern's failure to comply with the regulations adopted relating to the design and construction of gravity rides.  In response, Great Eastern filed a motion for partial summary judgment and for a declaration that the VADR did not apply to the operation of the snow tubing ride.

Following further briefing and oral argument, the circuit court determined that the general provisions contained in Part I of the VADR refer to standards and regulations applicable to "amusement devices" and, therefore, a ride must qualify as an amusement device before it is subject to the VADR.  Applying the definition of "amusement device" contained in the VADR[2] – "(i) a device or structure open to the public by which persons are conveyed or moved in an unusual manner for diversion and (ii) passenger tramways" – 13 VAC § 5-31-20(A), the court determined that the snow tubing ride was not an amusement device because "a device or structure . . . that typically would be a building, a structure that is manufactured and is not a slope."  Concluding that the VADR did not apply to the

---

[1] The VADR defines a "[g]ravity ride" as "a ride that is installed on an inclined surface, which depends on gravity for its operation to convey a passenger from the top of the incline to the bottom, and which conveys a passenger in or on a carrier tube, bag, bathing suit, or clothes."  13 VAC § 5-31-20(A).

[2] The VADR was amended in 2008 but those amendments did not alter the provisions at issue in this appeal.

snow tubing park, the circuit court entered an order granting Great Eastern's motion for partial summary judgment.

Vuich filed a petition for certification of an interlocutory appeal pursuant to Code § 8.01-670.1. The circuit court entered an order acknowledging that there was "substantial ground for difference of opinion regarding the application of the [VADR] to the facts of this case," that "this issue appears to be one of first impression," and that determination of the issue presented in the certification "will be dispositive of a material aspect" of the pending proceeding. The order also recited that the circuit court and the parties agreed that seeking the interlocutory appeal was in the parties' best interest. We granted Vuich's interlocutory appeal and the sole issue before us in this appeal is whether the snow tubing ride operated by Great Eastern at the Massanutten Resort is an "amusement device" under the VADR.[3]

DISCUSSION

---

[3] In the circuit court and the pleadings filed in this Court, Vuich argued that a snow tubing ride that meets the definition of a "gravity ride" is subject to the provisions of the VADR pertaining to gravity rides regardless of whether that ride also qualifies as an "amusement device" as defined by the VADR. Vuich abandoned this argument during oral argument before this Court and thus the circuit court's ruling has become the law of the case here. Covel v. Town of Vienna, 280 Va. 151, 163, 694 S.E.2d 609, 616 (2010).

The circuit court concluded that the snow tubing park was not a "device or structure" and therefore could not qualify as an amusement device under the VADR. In making its decision, the circuit court did not reference any specific definition of "structure" or "device," stating only that an amusement device "typically would be a building, a structure that is manufactured and is not a slope." The circuit court went on to say that the "tramway or the passenger conveyer or the stop at the bottom" would not "convert this slope into an amusement device." The facts relating to this issue were not in dispute and the issue was resolved by the entry of a partial summary judgment. Under these circumstances, we review the circuit court's judgment de novo. Schlegel v. Bank of America, 271 Va. 542, 549, 628 S.E.2d 362, 365-66 (2006).

Regulation of amusement devices is authorized by Code § 36-98.3. That section delegates the regulatory authority to the Board of Housing and Community Development ("Board"). The definition of "amusement device" in subsection A of Code § 36-98.3 states:

> (i) a device or structure open to the public by which persons are conveyed or moved in an unusual manner for diversion and (ii) passenger tramways.

This Code section does not further define "device or structure;" however, the definitions contained in the Uniform

Statewide Building Code, Code § 36-97, apply to Code § 36-98.3. Code § 36-97 defines "structure" but the definition is not definitive or helpful in this case as it specifically identifies "amusement devices" as "structures" within the definition itself.[4]

The Board promulgated the VADR establishing various requirements applicable to amusement devices. In promulgating the VADR, the Board adopted the definition of "amusement device" contained in Code § 36-98.3 and, like the Code section, did not further define "structure" or "device" and, consistent with the enabling legislation, incorporated the definitions contained in the Uniform Statewide Building Code, "unless the context clearly indicates otherwise." See

---

[4] Code § 36-97 provides that

"Structure" means an assembly of materials forming a construction for occupancy or use including stadiums, gospel and circus tents, reviewing stands, platforms, stagings, observation towers, radio towers, water tanks, storage tanks (underground and aboveground), trestles, piers, wharves, swimming pools, amusement devices, storage bins, and other structures of this general nature but excluding water wells. The word "structure" shall be construed as though followed by the words "or part or parts thereof" unless the context clearly requires a different meaning. "Structure" shall not include roadway tunnels and bridges owned by the Department of Transportation, which shall be governed by construction and design standards approved by the Commonwealth Transportation Board.

6

13 VAC § 5-31-20(A), (B). In regulating amusement devices, the Board did, however, adopt specific regulations for such activities or offerings as bungee jumping, 13 VAC § 5-31-220, et seq., gravity rides, 13 VAC § 5-31-180, concession go-karts, 13 VAC § 5-31-190, inflatable amusement devices, 13 VAC § 5-31-200, and artificial climbing walls, 13 VAC § 5-31-210. The "structure," indeed the method of "conveyance" or "movement" of riders, associated with these activities, which the Board regulates as "amusement devices," indicates that the Board applied the definition of "amusement devices" broadly.

In this appeal Vuich argues, as she did in the circuit court, that the snow tubing ride meets the definition of "amusement device" because the ride, taken as a whole, involved the construction of the conveyer system that transported the riders to the top of the slope, reconstruction of the slope to enhance the ride, formation and expansion of undulating chute-like lanes, and erection of a blue wall made of stadium padding, all of which "conveyed or moved" the riders "in an unusual manner for diversion."

Great Eastern responds that the snow tubing park is not an amusement device under the VADR because it is not a "structure." According to Great Eastern, common usage of the term "would suggest that an overlay of snow on a mountainside

is not a structure." Great Eastern also asserts that the snow tubing slope does not convey or move people: "it merely provides them with an opportunity to move themselves with the help of gravity." Finally, Great Eastern asserts that the identification of "passenger tramway" as a specific type of amusement device indicates that the General Assembly intended that ski lifts are separate from skiing and therefore the means by which a person arrives at the slope is separate from the activity on the slope itself.

We agree with Great Eastern's contention that the identification of passenger tramways as a specific type of amusement device by the General Assembly reflects an intent to treat and regulate those devices separately from other types of amusement devices. Such separation is consistent with the fact that when a rider exits a passenger tramway or "ski lift"[5] and proceeds to venture down a slope, the provider of the ski lift no longer controls the rider's movement. The rider retains the ability to choose his or her route down the slope and otherwise control the descent. However, as Great Eastern recognizes, the conveyer system used in conjunction with the snow tubing ride in this case does not fit within the

_____

[5] The Board in adopting the VADR specifically identified passenger tramways as including "ski lifts." See Virginia Dep't of Housing & Community Development, Preface to Virginia Amusement Device Regulations (2003 ed. 2005).

8

definition of "passenger tramway" contained in Code § 36-98.3(A) and the VADR. That definition requires not only that the passenger tramway "transport passengers uphill" but also that the tramway be "suspended in the air by the use of steel cables, chains or belts, or by ropes, and usually supported by trestles or towers with one or more spans." Code § 36-98.3(A); 13 VAC § 5-31-20(A).

We need not decide here, however, whether the conveyor system used in conjunction with the snow tubing ride in this case should be treated as part of, or separate from, the remainder of the ride for purposes of qualifying as an amusement device. Considering the facts of this case and the Board's broad application of the definition of "amusement device," we conclude that the snow tubing ride qualifies as an amusement device under the VADR independent of the passenger conveyor system.

The mountain slope upon which the snow tubing ride is located, while providing the platform on which the ride occurs, does not do so in its natural, undisturbed state. In creating the ride, the slope was considerably reformed through extensive movement of earth and formation of chute-like lanes necessary to guide the riders down the slope. Furthermore, an integral part of the ride was the blue wall made of stadium padding constructed at the end of the ride. These elements

9

satisfy the requirement that an amusement device be a structure.

The definition of amusement device also requires that riders be "conveyed or moved."  Code § 36-98.3(A); 13 VAC § 5-31-20(A).  This language imports a circumstance in which the rider is a passive participant and does not exert control over his or her direction during the ride.  While engaged in the snow tubing ride, the rider's path is guided solely by the chute-like lanes and the rider exercises no control over the path of his or her descent.[6]  The snow tube ride therefore is one in which the rider is "conveyed or moved" as required by the definition.  Finally, the movement must be "in an unusual manner for diversion."  There can be little disagreement that riding an inflated rubber donut-style tube down a slope in a chute-like lane is an "unusual manner" of movement and done "for diversion."

Accordingly, for the reasons stated, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

---

[6] The relative lack of control available to a snow tube rider compared to a skier distinguishes landscape architecture and other improvements made to a ski slope from those made to a snow tube chute.